UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

THOMAS E. PAPALE, JR. et al     CIVIL ACTION NO. 09-1405

-vs-                            JUDGE DRELL

RELIANCE STANDARD LIFE
     INS. CO.                   MAGISTRATE JUDGE KIRK


## REPORT AND RECOMMENDATION

Before the Court is plaintiff's motion to remand, Doc. #
**6**, referred to me by the district judge.


FACTUAL BACKGROUND

Plaintiffs  are  the  two  children  of  the  decedent-
insured, who seek death benefits under a life insurance policy
issued to their father, Thomas E. Papale, Sr. Papale served as
an assistant district attorney in Avoyelles Parish, Louisiana,
and, in 1994, as a member of the National District Attorneys'
Association, purchased a policy of life insurance issued by
the defendant, Reliance.

Suit was filed in state court but was removed to this
court on the basis of federal question jurisdiction, defendant
asserting that the case is governed by the provisions of

ERISA. Plaintiff has filed this motion to remand and argues that ERISA does not apply to the policy.

<u>Analysis</u>

Ordinarily, the existence of an ERISA plan is a question of fact. <u>Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.</u>, 295 F.3d 505, 510 (5th Cir.2002).[1] Pursuant to ERISA, an "employee benefit plan" includes an "employee welfare benefit plan." 29 U.S.C. § 1002(3). ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was ... established or maintained <u>by an employer or by an employee organization</u>, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment .... 29 U.S.C. §1002(1). [Emphasis added].

---

[1] However, when the facts are undisputed, the issue is  one of law. See <u>House v. Am. United Life Ins. Co.</u>, 499 F.3d 443, 448-49 (5th Cir.2007), petition for cert. filed, (U.S. Jan. 2, 2008)(No. 07-895).

A three-prong test is used to determine whether an employee benefit arrangement meets the definition of an employee welfare benefit plan and, thus, is an ERISA plan. To be an ERISA plan, the arrangement must be (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer (or employee organization) with the intent to benefit employees. Shearer v. Southwest Service Life Ins. Co., 516 F.3d 276 (5th C. 2008).

The third step of the analysis is broken down into two elements--(1) whether the employer (or employee organization) established or maintained the plan, and (2) whether the employer (or employee organization) intended to provide benefits to its employees or members. Shearer, supra. "To determine whether an employer (or employer organization) 'established or maintained' an employee benefit plan, 'the court should [focus] on the employer ... and [its] involvement with the administration of the plan.' " Hansen v. Cont'l Ins. Co., 940 F.2d 971, 978 (5th Cir.1991). The Fifth Circuit has noted that "the purchase [of insurance] is evidence of the establishment of a plan, fund, or program" and that "the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or

3

program has been established." <u>Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.</u>, 904 F.2d 236, 242 (5th Cir.1990) (internal quotation marks omitted). However, if an employer does no more than purchase insurance for its employees and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, the employer has not established an ERISA plan. <u>Hansen</u>, 940 F.2d at 978.

Plaintiffs emphasize that the policy cannot be an ERISA plan because Papale was not an employee of the district attorney's association and the district attorney's office did not establish or maintain the plan. This argument is easily rejected. A policy need only benefit employees and be established by an employer or an employee association. It is undisputed that the National District Attorney's Association offered the plan through which Papale purchased the insurance. However, that is not the end of the inquiry.

The Department of Labor regulations provide that the term "employee welfare benefit plan" shall not include a group insurance program offered by an insurer to employees or members of an employee organization under which:

1) no contributions are made by an employer or employee organization;

2) participation in the program is voluntary;

3)  the  sole  functions  of  the  employer  or  employee organization  with  respect  to  the  program  are,  without endorsing  the  program,  to  permit  the  insurer  to  publicize  the program  to  employees  or  members  and  to  collect  and  remit premiums;  and

4)  the  employer  or  employee  organization  receives  no consideration  for  the  program,  other  than  compensation  for administrative  services.  <u>Hansen</u>,  supra.

Because  there  was  insufficient  information  in  the  record, this  court  ordered  the  parties  to  conduct  additional  discovery with  regard  to  the  <u>Hansen</u>  analysis.  Supplemental  briefs  have been  filed.

A  copy  of  the  NDAA  brochure  has  been  provided  as  evidence as  well  as  the  affidavit  of  an  Assistant  Vice  President  of Reliance,  Peter  Sailor,  various  letters  from  the  NDAA's broker,  Complete  Equity  Markets,  Inc.,  a  copy  of  a  page  from NDAA's  website,  and  the  affidavit  of  former  Avoyelles  Parish District  Attorney,  Eddie  Knoll.  Plaintiffs  also  filed  an affidavit  by  David  Chatelain,  an  attorney  with  the  law  firm representing  plaintiff.[2]

---

[2] While the court has no reason to doubt the veracity of the affidavit, it is, in fact, hearsay, and is not admissible. It has not been considered by me.

Defendants argue that the NDAA website states that the insurance is an "immediate benefit" to NDAA members. It states that NDAA negotiated the terms of the coverage and distributed a brochure "encouraging members" to sign up for coverage. It also points out that the brochure displays an NDAA logo on it. Defendant also refers the court to letters it has filed in evidence from Complete Equity Markets, Inc. to Reliance which, it claims, prove NDAA's involvement in the wording of the policy.

The brochure states that the policy is "administered by" Complete Equity Markets, Inc. and is "underwritten by" Reliance. it states that participation is voluntary and that the plan "offers you and your dependents an excellent opportunity to purchase affordable group term insurance."

The letters make clear that Complete Equity Markets, Inc. prepared the brochure and got Reliance to approve it and printed it and distributed it. It also handled the open enrollment period for the NDAA members.

I do not find evidence in the record that the NDAA or Complete Equity Markets, Inc. negotiated the terms of coverage or encouraged the NDAA members to buy the insurance. Neither do I find that the concern of Complete Equity Market, Inc. regarding a death claim shows that it was involved in the

6

claims process. Rather it shows only that it was concerned with a possible loophole in the policy language that caused a problem in one particular case. Certainly Complete Equity Markets, Inc. had a right to make sure that the members were getting what they thought they were paying for.

This case is easily distinguishable from Hansen, supra. I this case, neither the district attorney's office nor the NDAA contributed to the cost of the plan and neither collected the premiums for the plan. There is no evidence that either received consideration for the plan. Participation in the plan was voluntary and the plan was not endorsed by the NDAA or the district attorney's office, but was instead, simply made available to NDAA members for their consideration. Compare Hansen, supra.

Therefore, for the foregoing reasons, I find that this dispute is not governed by the provisions of Erisa and thus this court has no jurisdiction.

IT IS RECOMMENDED THAT this case be REMANDED to the 12th Judicial District Court, Parish of Avoyelles, for further proceedings.

**OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar

days from service of this Report and Recommendation to file specific, written objections with the clerk of court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing.  Timely objections will be considered by the district judge before he makes his final ruling.  **FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this 5th day of January, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

8