UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| THOMAS E. PAPALE, JR., et al. | CIVIL ACTION NO. 1:09-cv-01405 |
| -vs- | JUDGE DRELL |
| RELIANCE STANDARD LIFE INSURANCE CO. | MAGISTRATE JUDGE KIRK |

## RULING

Pending before the Court is a Motion to Remand (Doc. 6) filed by the Plaintiffs, Thomas E. Papale, Jr. and Angela E. Papale (collectively, "Plaintiffs"). We referred the motion to the magistrate judge for consideration (Doc. 9). He issued a Report and Recommendation (Doc. 13) suggesting that we grant the Plaintiffs' motion. The Defendant filed timely objections to the Report and Recommendation (Doc. 14). For the reasons that follow, the findings of the magistrate judge in the Report and Recommendation will be ADOPTED IN PART, the Plaintiffs' Motion to Remand will be GRANTED, and the case will be REMANDED to the Twelfth Judicial District Court for the Parish of Avoyelles. Disposition will follow by a separate judgment.

I. **Background**

Mr. Thomas E. Papale, Sr. ("decedent") served as an assistant district attorney for the Twelfth Judicial District Attorney's Office in Avoyelles Parish, Louisiana ("APDA's Office"). The decedent was also a member of the National District Attorneys Association ("NDAA"). During his tenure with the APDA's Office, the decedent purchased a Voluntary Group Term Life Insurance Policy with the Defendant, Reliance Standard Life Insurance Co. ("Reliance"). The policy carried a

life benefit in the amount of $50,000, and became effective on October 1, 1994. The Plaintiffs, the decedent's two children, were named beneficiaries on this policy.

On September 5, 2007, the decedent applied for $10,000 of additional life insurance coverage through Reliance, naming his wife, Stephanie Roy Papale ("Mrs. Papale"), as the beneficiary on that prospective policy. Reliance rejected this second application. Nonetheless, upon the decedent's death, Reliance issued payment on the first policy to Mrs. Papale.

As a result, the Plaintiffs filed this lawsuit in state court on July 16, 2009, seeking damages and statutory penalties against Reliance for the insurer's alleged breach of contract. The action was removed to this Court on August 11, 2009. (Doc. 1). The Plaintiffs now move that we remand the lawsuit, arguing that the policy is not covered by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq, the statute upon which our jurisdiction is premised. After careful consideration, the Court will grant the Plaintiffs' motion.

II.   **Law and Analysis**

We have conducted the required *de novo* review of the magistrate judge's report and recommendation in this case, which discusses ERISA's applicability to the policy issued by Reliance to the decedent. "To be an ERISA plan, an arrangement must be (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer [or employee organization] with the intent to benefit employees." Shearer v. Sw. Serv. Life Ins. Co., 516 F.3d 276, 279 (5th Cir. 2008). The two broad issues in contention here are whether the NDAA may be considered an "employee

organization," and whether the safe harbor provision exempts the policy from ERISA coverage. Because our determination as to the first issue is dispositive in the case, we need not discuss the second issue in any detail.

We disagree with the magistrate judge's conclusion that the NDAA is an "employee organization" as that term is defined in ERISA.[1] The statutory definition provides:

> The term "employee organization" means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and *which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships*; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

29 U.S.C. § 1002(4) (emphasis added). As such, two types of entities may be considered "employee organizations" under ERISA: (1) "any labor union or any organization of any kind . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships"; and (2) "any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan." Id. Neither party disputes that the NDAA is not an "employees' beneficiary association." Thus, we need only determine whether the NDAA is an organization which exists, at least in part, to deal with its members'

---

[1] It is necessary to make this determination because ERISA governs "employee welfare benefit plans," which the statute defines, in part, as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an *employer or by an employee organization*, or by both." 29 U.S.C. § 1002(1) (emphasis added). The NDAA was clearly not the decedent's employer, leaving before us only the question of whether the NDAA constitutes an "employee organization."

employers concerning employment matters. We find that it is not.

Jurisprudence interpreting § 1002(4) is relatively scant, but we take note of at least some general principles regarding the definition. The Ninth Circuit, collecting cases and attributing to the term "employee organization" its "plain meaning," explained that the provision covers "labor unions and other traditional employee organizations established by employees." Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904, 917 n.9 (9th Cir. 1997); accord Arnold v. Lucks, 392 F.3d 512, 518 (2d Cir. 2004) (holding that a labor union was "an organization that represents employees in an industry affecting commerce," and therefore, was an "employee organization" under ERISA). Factors commonly considered in determining whether an organization falls within the statutory definition include the composition of the group's membership, its activities on behalf of members vis-a-vis employers, and whether the group deals with one or multiple employers (if any). See Greenwood v. Hartford Life Ins. Co., 471 F. Supp. 2d 1049, 1052 (C.D. Cal. 2007) (citing Sarraf v. Standard Ins. Co., 102 F.3d 991 (9th Cir. 1996)).

In this instance, although the plan was marketed to members of the NDAA, there is no evidence that the NDAA had the role of "dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships." 29 U.S.C. § 1002(4).[2] This is an essential element of the definition and,

---

[2] Our conclusion on this point finds considerable support in case law. See, e.g., Sarraf, 102 F.3d at 992-93 (finding that a county employee association was an "employee organization," because its membership was limited to county employees, and because it existed "for the purpose, in part, of dealing with [the county] concerning employee benefit plans, including various insurance plans, and other matters incidental to employment relationships, such as salary negotiation, collective bargaining, and lobbying efforts on behalf of its members"); Taggart Corp. v. Life and Health Benefits Admin., Inc., 617 F.2d 1208, 1210 (5th Cir. 1980) (ruling that a for-profit organization which "provide[d] group

on these facts, there is a substantial disconnect. See Hansen v. Cont'l Ins. Co., 940 F.2d 971, 977-78 (5th Cir. 1991) ("The fact that a 'plan' exists, however, does not necessarily mean that the plan is an ERISA plan. . . . [because] 'an employer or employee organization . . . must establish or maintain the plan, fund, or program.'") (quoting Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982)). Reliance merely marketed insurance to members of the NDAA, which was not the decedent's employer. The decedent's membership in the NDAA was voluntary and direct, and was not a requirement of nor a benefit offered by his employer as part of an Employee Welfare Benefit Plan. Contra Donovan, 688 F.2d at 1371 ("The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program."). Aside from the very

---

insurance to employers too small to qualify for group rates on their own" was not an "employee organization"); Mandala v. Ca. Law Enforcement Ass'n, 561 F. Supp. 2d 1130, 1133-36 (C.D. Cal. 2008) (holding that a law enforcement association was not an "employee organization" under ERISA, because it did not deal with employers, and because its members did not share a sufficient commonality of interests to be considered an "employees' beneficiary association"); Greenwood, 471 F. Supp. 2d at 1052 (finding that a dental hygienists' association was not an "employee organization" because it did "not require employment to be [sic] member," did "not deal with specificity towards any principal employer or group of employers, and its lobbying efforts . . . . [were] industry-wide, not specific to employee issues"); Empire Blue Cross & Blue Shield v. Consol. Welfare Fund, 830 F. Supp. 170, 174 (E.D.N.Y. 1993) (holding that a union did not qualify as an "employee organization" because although it acted as a collective bargaining representative for its regular members for all purposes, it did "not act as its 'associate members'' collective bargaining representative for any purpose other than with respect to [a benefit fund]"); Plotkin v. Ass'n of Eye Care Ctrs., Inc., 710 F. Supp. 156, 161 (E.D.N.C. 1989) (holding that an optometric association "which marketed [a] health care plan to numerous small optometric practices" was not an "employee organization" under ERISA, because the association "had no control over the content and administration of the health care plan, but merely served as a conduit," and because "[n]o individual optometric practice had any control over [the association's] day-to-day operation or administration").

nature of the decedent's role as a prosecutor, then, his membership in the NDAA seems to have been entirely unrelated to his employer.

In response to the Plaintiffs' motion, Reliance submitted a list of the purposes of the NDAA taken from its website, and therefrom summarily concluded that the NDAA is an "employee organization." However, none of the listed purposes of the NDAA even hints at dealing with its members' employers. Of course, the organization serves its members based upon their employment status; it is an association which is, for the most part, comprised of prosecutors.[3] But the emphasis under the statute must be placed upon the NDAA's involvement with its members' *employers*, which in this case would mostly be district attorneys' offices. The NDAA is certainly not a collective bargaining agent, and status as such is not necessarily required. But, at least judging from the association's stated purposes, the NDAA does not deal with employers with regard to employment matters *in any capacity*.

Finally, in reviewing the balance of the evidence submitted by Reliance, we find no other indications that the NDAA deals with employers. The NDAA engages in policy-driven lobbying efforts, particularly at the national level. But these efforts do not ostensibly target members' employers, and are not related to employment matters, as is required by the statute.[4] Moreover, although the NDAA logo is affixed

---

[3] Evidence before the Court indicates that the NDAA offers two categories of "non-active" membership - one category for former prosecutors, and another for non-prosecutors, whose membership must be approved by the NDAA Board of Directors. (Doc. 11-6, Exh. E, p. 1). This is yet another fact which militates against a finding that the NDAA is an "employee organization."

[4] The NDAA maintains that its "mission is 'to be the voice of America's prosecutors and to support their efforts to protect the rights and safety of the people.'" (Doc. 11-2, Exh. A). As part of that mission, the NDAA gives prosecutors the opportunity to express their views within the organization, which are then carried to national policymaking forums. Clearly, these activities, though important, do

to a promotional booklet which touts the benefits of the policy, there is no indication that the NDAA deals with employers regarding its members' insurance options, either as to this policy specifically or in general. (Doc. 11-3, Exh. B). In short, nothing before us connects the NDAA to its members' employers.

### III. Conclusion

However noble the goals of the NDAA may be nationally, the association does not meet the definition of an "employee organization" under the statute. As such, the policy at issue in this case is not covered by ERISA, and the Court lacks jurisdiction to hear the dispute concerning it. Unlike the magistrate judge, we premise our ruling upon the conclusion that the NDAA is not an "employee organization," rather than the so-called ERISA "safe harbor" regulation. Nevertheless, we do agree with the remaining analysis by the magistrate judge and find that this action must be remanded in any case.

Accordingly, the magistrate judge's Report and Recommendation (Doc. 6) will be ADOPTED IN PART, as specified above, and the Plaintiffs' Motion to Remand (Doc. 6) will be GRANTED.

SIGNED on this 26 day of May, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

not involve dialogue with employers on behalf of members.